IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| GEORGIA M. GATHERS, | ) | Civil Action No. 3:07-1488-PMD-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

On December 31, 2003, Plaintiff applied for SSI and DIB. Plaintiff's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held February 3, 2005, at which Plaintiff appeared and testified, the ALJ issued a decision dated November 23, 2005, denying benefits. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can perform.

Plaintiff was forty-six years old at the time of the ALJ's decision. She has a high school education and past relevant work as a cashier, security guard, custodian, housekeeper, laborer, and

heavy equipment operator. Plaintiff alleges disability since October 21, 2003, due to back problems, leg pain, blurred vision, and bladder incontinence.

The ALJ found (Tr. 27-28):

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's degenerative disc disease, thoracic intramedullary lesion, and obesity are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant retains a residual functional capacity to perform a significant range of sedentary work activity as described above.

7. The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

8. The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416.963).

9. The claimant has a "high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

11. The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR §§ 404.1567 and 416.967).

12. Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.21 and 201.27 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as an inspector, a machine tender, and a sorter.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

On March 29, 2007, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on May 25, 2007.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

Plaintiff was examined in the emergency room at Care Alliance-Berkeley Hospital on October 22, 2003. She complained of sharp back pain that began after she fell at work.

Examination revealed that Plaintiff had a decreased range of motion ("ROM") of her spine with tenderness. X-rays of Plaintiff's spine were unremarkable. Dr. Glenn Freeman diagnosed Plaintiff with low back pain and a lumbar contusion. Tr. 102-109.

On November 5, 2003, Dr. Steven Poletti, an orthopedist, evaluated Plaintiff for complaints of low back and bilateral leg pain. Plaintiff complained of numbness below her knees with urinary incontinence and severe mid to low back pain. Dr. Poletti noted that Plaintiff had a straight spine, pain with extension, intact reflexes, and stood in light flexion. Plaintiff had dysesthesia in both feet, intact peripheral pulses, no edema, and no long tract signs. Dr. Poletti recommended that Plaintiff stay out of work pending an MRI and follow up. Tr. 118-119. On November 6, 2003, an MRI revealed degenerative disc disease, disc bulge, and lumbar facet degenerative arthritic changes. Tr. 112. An MRI of Plaintiff's thoracic spine on November 7, 2003, revealed an intramedullary lesion and left paracentral disc protrusion with ligamentum thickening, which produced spinal cord deformity and moderate canal compromise. Tr. 111.

On November 10, 2003, Dr. Poletti noted that Plaintiff had degenerating discs and disc bulges at L4-5 and L5-S1. He hypothesized that the discs could have been injured when Plaintiff fell at work. Because of an abnormality shown on the MRI of Plaintiff's thoracic spine, Dr. Poletti ordered an MRI with contrast dye. Tr. 117. On November 11, 2003, MRI revealed a large, non-enhancing intramedullary lesion in Plaintiff's thoracic spinal cord. The image, however, was not typical for intramedullary neoplasm. Tr. 110. On November 11, 2003, Dr. Poletti recommended that Plaintiff remain out of work for two weeks, pending a neurological examination. Tr. 115-116.

On December 9, 2003, Dr. Poletti wrote that Plaintiff had been followed by neurologist Dr. Thomas Hughes who suspected that Plaintiff had an avascular event, such as a cord infarct, which

contributed to Plaintiff's back pain, as opposed to multiple sclerosis. Dr. Poletti opined that Plaintiff was not a candidate for surgery and completed a patient status form in which he recommended that Plaintiff not work. Plaintiff was to follow up with Dr. Poletti in four weeks. Tr. 113-114.

On December 24, 2003, an MRI of Plaintiff's thoracic spine revealed cord expansion. The adjacent and intervertebral disc spaces were unremarkable with no expansion of the canal. Tr. 149-150. An MRI of Plaintiff's brain on January 8, 2004 did not confirm or completely rule out multiple sclerosis, but the MRI results revealed that multiple sclerosis, sarcoidosis, and neoplasm were unlikely. Tr. 158-159.

Dr. Alton Bryant, a neurologist, treated Plaintiff on January 28, 2004 for complaints of urinary incontinence when she sneezed. Tr. 168-169. He reported that Plaintiff was areflexic with normal strength in her lower extremities. She had intact sensation in her lower extremities and a stable gait. Plaintiff's blood pressure was high (200/130), but Plaintiff reported she had not filled her prescription for blood pressure medication and was unable to return to her medical clinic for re-evaluation of her blood pressure due to cost. Tr. 168-169.

A lumbar puncture in February 2004 was negative for a malignant tumor. Tr. 151-153. On March 15, 2004, Dr. Bryant reported that Plaintiff had a lesion on her spinal cord, of unknown etiology. Dr. Bryant noted that multiple sclerosis was in the differential diagnosis, but opined that she should not be diagnosed with multiple sclerosis because she had only one lesion and a clinical diagnosis of multiple sclerosis must be based on multiple lesions which are spread across time and are in different places in the nervous system. Tr. 165-166.

On March 18, 2004, Plaintiff went to the Franklin C. Fetter Cross Health Center to re-establish care. Treatment notes reveal that Plaintiff's blood pressure was 140/90. She

complained of chronic back pain and that her medications were too expensive. Plaintiff was diagnosed with hypertension and thoracic/lumbar back pain. Tr. 132. On April 8, 2004, Plaintiff complained of headaches and nose bleeds. Her blood pressure was 154/110. She was instructed to go on a diet and to exercise. Tr. 129. On April 19, 2004, Plaintiff's blood pressure improved to 110/80. Tr. 128.

On May 4, 2004, Dr. George B. Del Porto, examined Plaintiff for a Workman's Compensation evaluation of her incontinence. Dr. Del Porto noted that Plaintiff's bladder neck appeared well suspended, but he could not be sure because her bladder was not totally full; she did not demonstrate incontinence upon examination; and she was obese. Tr. 140. Dr. Del Porto performed a cystoscopy on May 18, 2004, which revealed normal bladder capacity. He noted that Plaintiff had normal feelings of fullness with no evidence of urgency incontinence, demonstrable stress urinary incontinence when she coughed (she was noted to have "quite a hardy cough"); definite loss of urethra vesical angle; and a somewhat stenotic urethra, consistent with urethral syndrome. Dr. Del Porto diagnosed stress urinary incontinence and a failure of Plaintiff's previously performed influence sling secondary to Plaintiff's fall. He directed Plaintiff to lose at least 50 pounds prior to undergoing repeat surgery of the influence sling. Tr. 139.

Dr. Bryant examined Plaintiff in August 2004 and noted that she used Percocet for back pain and had 5/5 muscle strength, +1 reflexes in her lower extremities, +2 reflexes in her upper extremities, a good gait, and intact sensation. Tr. 163-164. On August 16, 2004, an enhanced MRI of Plaintiff's thoracic spine was performed. It revealed persistent abnormalities at T2 with less than

a 3 mm cystic defect in the left paracentral aspect of the cord without evidence of syrinx.[*] Findings were not typical of multiple sclerosis. Tr. 150. On November 3, 2004, Plaintiff reported to Dr. Bryant that riding in a car was difficult and she asked for a lumbar support pillow. Dr. Bryant noted that Plaintiff had full strength in her lower extremities with +1 reflexes of her lower extremities. He prescribed Percocet, Darvocet, and a lumbar support pillow and referred Plaintiff to Dr. Curtis Worthington, a neurosurgeon. Tr. 162-163.

On February 1, 2005, Dr. Bryant completed a questionnaire in which he wrote that he spoke with Plaintiff and she related that she could sit for thirty and stand for fifteen minutes without needing to alternate positions. Plaintiff also reported to Dr. Bryant that she was capable of performing some activities around the house for approximately thirty minutes a day, but would need to lie down several times a day for 30-45 minutes due to increased back pain caused by her activities. After speaking with Plaintiff, Dr. Bryant filled out a check-box form, stating that Plaintiff could continue her current activities. Dr. Bryant opined that Plaintiff would have to take breaks or rest periods if she worked, breaks which might be unscheduled and unpredictable. He also opined that Plaintiff would not be capable of working on a regular and continuing basis and she would be absent from work more than four days per month due to her medical condition. Tr. 170-171.

---

[*]A syrinx is an abnormal cavity in the spinal cord in syringomyelia. Syringomyelia is:
> a slowly progressive syndrome of cavitation in the central segments of the spinal cord, generally in the cervical region, but sometimes extending into the medulla oblongata (syringobulbia) or down into the thoracic region; it may be of developmental origin, arise secondary to tumor, trauma, infarction, or hemorrhage, or be of unknown cause.

Dorland's Illustrated Medical Dictionary 1841 (30th ed. 2003).

On February 7, 2005, Dr. Bryant noted that Plaintiff had been examined by Dr. Worthington, who opined that surgery or a spinal cord biopsy were not appropriate at that time. Dr. Bryant wrote that Plaintiff underwent bladder surgery, which helped her control her bladder function. Dr. Bryant noted that Plaintiff had full strength, with only trace reflexes in her lower extremity. He also noted that Plaintiff's pain restricted her ability to move fluidly. Dr. Bryant prescribed Kadian extended release morphine at a low dose and filled out paperwork for Plaintiff to obtain a handicapped parking placard. Tr. 176-177.

On March 1, 2005, Dr. Worthington reported that Plaintiff was doing well clinically and suffered only from some mid-back thoracic pain; she was not weak and was functioning well; and her incontinence had resolved after bladder surgery. He opined that operating on her spinal cord lesion was not appropriate because she was performing so well clinically. Tr. 175.

On July 11, 2005, Dr. Bryant noted that Plaintiff was in severe pain as a result of her lumbar injury and not her spinal cord lesion. He wrote that Plaintiff had full strength in her lower extremities with some limitation in her ROM due to pain. Plaintiff's sensory examination was intact and she reported that her bladder function had been good recently. Dr. Bryant prescribed Valium for Plaintiff's back pain and had her stop taking Kadian. He opined, for purposes of Plaintiff's worker's compensation carrier, that she had not reached maximum medical improvement. Tr. 173-174.

Plaintiff was examined by Dr. Poletti on July 13, 2005. He noted that Dr. Patel diagnosed Plaintiff with a syrinx within the spinal cord. Dr. Poletti found that, secondary to Plaintiff's bulging lumbar disc, she suffered from a specific ten percent impairment. Dr. Poletti opined that Plaintiff's intramedullary spinal lesion, if it resulted in a need for further surgery and was considered

8

post-traumatic, could far outweigh a thirty percent impairment. He could not, however, opine this with reasonable medical certainty and noted that he would leave such a finding to Dr. Patel or Worthington, as they had more experience in such matters. Dr. Poletti opined that Plaintiff could not constantly sit, bend, twist, push, or perform any heavy repetitive lifting. He recommended that Plaintiff avoid repetitive activity or exertional activity and noted that such activity could, theoretically, increase Plaintiff's spinal cord syrinx, if Plaintiff had a syrinx. Tr. 179.

Plaintiff alleges that: (1) the ALJ erred as to her findings regarding Plaintiff's residual functional capacity ("RFC"); (2) the ALJ failed to give proper weight to the opinions of Plaintiff's treating physicians regarding the nature and severity of her impairments; and (3) the ALJ erred in relying on the testimony of the VE in finding that there are a significant number of jobs in the national economy that Plaintiff can perform, because the VE's testimony was inconsistent with the Dictionary of Occupational Titles ("DOT").

### A.    Substantial Evidence/Treating Physician

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence. In particular, she claims that the ALJ erred in determining her RFC and by not giving controlling weight to the opinions of Drs. Bryant and Poletti. The Commissioner contends that substantial evidence supports the ALJ's conclusion that Plaintiff had the RFC to perform a significant range of sedentary work.

Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

The ALJ's determination that Plaintiff had the RFC to perform a significant range of sedentary work is supported by substantial evidence. Although Plaintiff suffered from hypertension, the medical evidence and her testimony reveals that her blood pressure was well-controlled when she was compliant with her medications. See Tr. 128, 162, and 205. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1165-6 (4th Cir. 1986).

Cystoscopy revealed that Plaintiff had stress urinary incontinence. The medical treatment notes, however, fail to corroborate Plaintiff's allegations of severe urinary incontinence. Further, the medical records reveal that Plaintiff had successful resolution of her urinary incontinence after surgery. See Tr. 173, 175, 176.

The ALJ found that Plaintiff suffered from the severe impairment of obesity. Treatment notes, however, revealed that Plaintiff was able to move about generally well and sustain consistent function. Objective examination revealed that Plaintiff had good muscle tone. There was no showing that Plaintiff suffered from sleep apnea or heart disease or that her ability to manipulate was negatively affected.

The ALJ also found that Plaintiff suffered from the severe impairments of degenerative disc disease and a thoracic intramedullary lesion. The ALJ found that Plaintiff's impairments reduced her RFC, such that she was limited to performing sedentary work with the additional limitations of no more than occasional bending, kneeling, stooping, crouching, crawling, twisting, and climbing

stairs; no climbing of ropes, ladders, or scaffolding; a sit/stand option that would allow for sitting no more than thirty minutes before changing position and standing no more than fifteen minutes before changing position; and frequent restroom access. Tr. 24. These restrictions are supported by the findings of Dr. Poletti and Dr. Bryant, as discussed further below. The ALJ's findings are also supported by the treatment notes which indicated that Plaintiff had full strength, full ROM, normal gait, and intact sensation. Tr. 118, 162, 163, 168, 173, and 176. The RFC outlined by the ALJ is also consistent with other medical evidence. Dr. Worthington noted that Plaintiff was not weak and was functioning well, was doing well clinically, and she suffered from some mid-back thoracic pain. He opined that operating on the lesion was not appropriate because Plaintiff was performing so well clinically. Tr. 175.

Objective medical testing also supports the ALJ's findings. A lumbar puncture performed in February 2004 was negative for a malignant tumor. Tr. 151-153. On August 16, 2004, an enhanced MRI revealed no evidence of syrinx. Tr. 150.

The ALJ's decision is also supported by the opinion of the State agency physicians who reviewed Plaintiff's medical records and completed residual functional capacity ("RFC") assessments which showed a capacity for at least sedentary work. 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."). On April 12, 2004, Dr. Charles Jones, a State agency physician, reviewed Plaintiff's medical records and opined that she could occasionally lift and/or carry up to twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk about six hours in an eight hour workday; and sit about six hours in

an eight-hour workday. He also opined that Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl and could never climb ropes, ladders, or scaffolds. Tr. 120-127. On August 16, 2004, another State agency physician reviewed Plaintiff's medical records and opined that Plaintiff could lift and/or carry about twenty pounds occasionally and ten pounds frequently; stand and or walk about six hours in an eight-hour workday; and sit about six hours in an eight-hour workday. This State agency physician also opined that Plaintiff could frequently balance; occasionally climb ramps/stairs, stoop, kneel, crouch, or crawl; and could never climb ladders, ropes, or scaffolds. Tr. 141-148.

Plaintiff claims that the ALJ erred in not giving controlling weight to the opinions of Dr. Bryant and Dr. Poletti. Specifically, she claims that Dr. Bryant's opinion that she needed to lie down several times daily and Dr. Poletti's opinion that she was not capable of constant sitting show that she does not have the RFC to perform sedentary work on a regular and continuing basis at any exertional level. The Commissioner contends that the ALJ properly afforded minimal weight to Dr. Bryant's and Dr. Poletti's opinions that Plaintiff was unable to work as a result of her medical condition as these opinions were unsupported by the weight of the medical evidence of record. Additionally, the Commissioner contends that the ALJ did not reject Dr. Poletti's July 2005 limitations or the subjective limitations adopted by Dr. Bryant on the February 2005 questionnaire.

Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1988), and Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986). In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating physician.

See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983). The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). The Court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

Contrary to Plaintiff's argument, the ALJ gave great weight to the majority of the opinions and restrictions set out by Dr. Bryant and Dr. Poletti. The ALJ incorporated Dr. Bryant's limitations as to Plaintiff's ability to sit and stand. She also incorporated Dr. Poletti's restrictions in limiting Plaintiff to lifting and carrying no more than ten pounds occasionally and lesser amounts frequently; limiting her to work that required no more than occasional bending and twisting, and requiring that Plaintiff have a sit/stand option.

The ALJ's decision to discount Dr. Poletti's further restriction that Plaintiff should not do any repetitive lifting and should not do any exertional activity is supported by substantial evidence. As noted by the ALJ, these restrictions were based on Dr. Poletti's hypothesis that such activity could increase Plaintiff's spinal cord syrinx, but the enhanced MRI revealed no evidence of syrinx. See Tr. 21, 25, 150.

The ALJ's decision to not give great weight to Dr. Poletti's opinion that Plaintiff could not work and Dr. Bryant's opinion that Plaintiff would have to take breaks or rest periods which might be unscheduled and unpredictable, she would not be capable of working on a regular and continuing basis, and she would be absent from work more than four days per month due to her medical condition is supported by substantial evidence. First, these opinions are not well supported by the medical record. In finding that Plaintiff could not work, Dr. Poletti stated that Plaintiff suffered from a benign syrinx. MRI examination in August 2004, however, expressly revealed no evidence of a syrinx. Tr. 150. Dr. Bryant's restrictions concerning rest breaks and absences from work were based on Plaintiff's subjective statements. The ALJ specifically found that Plaintiff's allegations regarding her limitations were not entirely credible as they were inconsistent with the medical evidence of record, Plaintiff's reports to her physicians, and the treatment she sought and received. Tr. 21-22. These restrictions from Dr. Poletti and Dr. Bryant are not supported by the medical findings of Dr. Worthington, a neurosurgeon. Dr. Worthington noted that Plaintiff was performing so well functionally that surgery was not appropriate. Tr. 175. The ALJ's decision is also supported by the findings of the State agency physicians, as discussed above.

      B.      <u>Hypothetical to the VE/DOT</u>

Plaintiff alleges that the ALJ's reliance on the VE's testimony was improper because the hypothetical question she posed to the VE failed to take into account all of Plaintiff's limitations as established both by her testimony and the opinion evidence provided by Drs. Bryant and Poletti. She also alleges that the VE's testimony is patently unreliable, because a review of the DOT establishes that the three jobs which were identified at the hearing are not consistent with the DOT codes listed during the VE's testimony.

In order for a VE's opinion to be relevant or helpful, it must be based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all of the plaintiff's impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The questions, however, need only reflect those impairments that are supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).

The ALJ posed a hypothetical question to the VE in which she asked the VE to consider an individual of Plaintiff's age, education, and work history who would be limited to sedentary work that did not require more than occasional bending, stooping, kneeling, crouching, crawling, twisting, and climbing stairs; no climbing ropes, ladders, or scaffolding; and a sit/stand option which would allow her to change position after thirty minutes of sitting or fifteen minutes of standing. Tr. 219 and 221. In response, the VE testified that such an individual could work as an inspector (with 1,600 jobs available locally and 355,000 nationally); a machine tender (600 jobs locally and 127,000 nationally), and a sorter (500 jobs locally and 64,000 nationally). Tr. 221. Plaintiff contends that the ALJ erred in failing to take into account all of her limitations as established by her testimony and the opinion evidence of Dr. Bryant and Dr. Poletti. Specifically, Plaintiff alleges that the ALJ erred in not including in her hypothetical Dr. Bryant's opinion that she would need to take frequent rest breaks and would have excessive absences if she attempted to work and Dr. Poletti's opinion that she was incapable of prolonged sitting and should avoid any type of exertional activity. The record, however, does not contain substantial evidence that Plaintiff would need to take frequent rest breaks or that she would be absent from work for more than four days a month. Dr. Bryant merely incorporated these limitations based on Plaintiff's subjective statements on February 1, 2005. The record does not contain objective medical evidence to support these assertions. Thus, the ALJ did

15

not err in not including these limitations in his hypothetical because these restrictions were not supported by the record. See Lee v. Sullivan, 945 F.2d 689, 698-94 (4th Cir. 1991)(noting that a requirement introduced by claimant's counsel in a question to the VE "was not sustained by the evidence, and the vocational expert's testimony in response to the question was without support in the record."); Chrupcala, supra.

Plaintiff also alleges that the VE's testimony is unreliable because the jobs identified were not consistent with the DOT codes listed. In response to the hypothetical, the VE testified that such an individual could work as an inspector (DOT 726.684-050), machine tender (DOT 574.685-010) and sorter (DOT 521.687-086). Reviewing the DOT descriptions, the actual job titles in the cited sections are film touch up inspector; coater, brake linings; and nut sorter. It merely appears that the VE abbreviated or shortened the names of the jobs (the description for the coater, brake linings job begins with the job description of "tends machine"), which does not appear to conflict with the DOT. See Fisher v. Barnhardt, 181 Fed. Appx. 359, 367 (4th Cir. 2006)(unpublished)(finding that the VE's testimony did not necessarily conflict with the DOT where the VE cited DOT codes that appeared to be one digit off from the ones applicable to the job titles cited). All of the jobs identified by the VE are classified as sedentary work and are consistent with the RFC limitations the ALJ found.

## CONCLUSION

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, <u>Richardson v. Perales</u>, <u>supra</u>.  Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, <u>Blalock v. Richardson</u>, <u>supra</u>.  The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion.  <u>Shively v. Heckler</u>, <u>supra</u>.  It is, therefore,

RECOMMENDED that the Commissioner's decision be affirmed.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

July 9, 2008
Columbia, South Carolina